FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 24, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREA L.,[1] | No. 2:18-cv-00253-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 29, 30 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 29, 30. The parties consented to proceed before a magistrate judge. ECF No. 28. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 29, and denies Defendant's motion, ECF No. 30.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v),
416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the
Commissioner must find that the claimant is not disabled. 20 C.F.R. §§
404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other
work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that 1) the claimant is
capable of performing other work; and 2) such work "exists in significant numbers
in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.
Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 7, 2014, Plaintiff applied both for Title II disability insurance
benefits and Title XVI supplemental security income benefits alleging a disability
onset date of December 31, 2007. Tr. 108-09, 243-44, 247-56. The applications
were denied initially and on reconsideration. Tr. 160-68, 174-83. Plaintiff
appeared before an administrative law judge (ALJ) on November 18, 2016. Tr. 57-
107. During the hearing, the ALJ determined that despite Plaintiff's alleged onset
date of December 31, 2007, the adjudicatory period for Plaintiff's Title II claim

could not begin any earlier than July 31, 2008, which was the day after the final and binding reconsideration of a prior claim filed by Plaintiff.  Tr. 24, 64.  On July 19, 2017, the ALJ denied Plaintiff's claim.[2]  Tr. 20-53.

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 31, 2008 through June 30, 2011, or from May 30, 2014 through the date of the decision.  Tr. 26.  At step two, the ALJ found that Plaintiff had the following severe impairments from July 31, 2008 to June 30, 2011: migraine headaches with incidental Chiari I malformation, non-epileptic seizure disorder, bilateral knee instability with ligamentous laxity, generalized anxiety disorder, post-traumatic stress disorder, and borderline personality disorder.  Tr. 27.  The ALJ found that Plaintiff had the following severe impairments from May 30, 2014 onward: migraine headaches with incidental Chiari I malformation, non-epileptic seizure disorder, bilateral patellar dislocation, status post right tibia and fibula rotational osteotomy, unspecified osteopenia, undifferentiated connective tissue disorder vs. Sjogren's syndrome, depressive disorder vs. major depressive disorder, anxiety disorder, post-traumatic stress

_____

[2] The ALJ found there were two distinct periods requiring adjudication: July 31, 2008 through June 30, 2011 for Plaintiff's Title II claim, and May 30, 2014 through the date of the ALJ's decision for Plaintiff's Title XVI claim.  Tr. 24.

disorder, somatic symptom disorder, borderline personality disorder, and marijuana use. Tr. 27.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 28. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] could stand and/or walk up to two hours in an eight-hour day and could sit for an unlimited amount of time; she would need to stand for up to five non-continuous minutes during each hour of sitting, but her standing would not involve leaving the workstation; she could occasionally kneel, crouch, crawl, and climb ramps or stairs; she could frequently stoop and balance on even ground; she could never climb ladders, ropes, or scaffolds; she should avoid all exposure to unprotected heights and dangerous, moving machinery; she should not be required to drive commercially; and she would be limited to simple, routine tasks that are of the lower, semi-skilled level (SVP 3), provided they are repetitive and do not require adaptation to changes in the work setting.

Tr. 33.

At step four, the ALJ found Plaintiff was unable to perform any past relevant work. Tr. 43. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cashier II, agricultural produce sorter, and appointment clerk. Tr. 43-44. Therefore, the ALJ concluded that Plaintiff was not under a

disability, as defined in the Social Security Act, from July 31, 2008 to June 30, 2011, and from May 30, 2014 through the date of the decision.  Tr. 45.

On May 15, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 7-13, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 29 at 1.

## DISCUSSION

### A.  Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the medical opinions of Stephen Rubin, Ph.D., and Frank Rosekrans, Ph.D.  ECF No. 29 at 5-12.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

ORDER - 9

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).
Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2011) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31. The opinion of a nonexamining physician may serve as substantial evidence if

it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 1.  Dr. Stephen Rubin

Stephen Rubin, Ph.D., clinical psychologist, reviewed Plaintiff's record and testified at the administrative hearing.  Tr. 64-79.  Dr. Rubin testified that Plaintiff was moderately limited in the areas of daily living and concentration, persistence, or pace.  Tr. 72.  He opined that Plaintiff was only mildly limited in the area of social functioning.  Tr. 72.  Dr. Rubin testified that Plaintiff could perform work with simple, routine tasks.  Tr. 79.  Dr. Rubin also testified that Plaintiff's impairments did not medically equal a listing in the Listing of Impairments.  Tr. 71-72.

The ALJ gave Dr. Rubin's opinion great weight.  Tr. 42-43.  Because Dr. Rubin's opinion was contradicted by the examining opinion of Frank Rosekrans, Ph.D., Tr. 477-91, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Rubin's opinion.  *Bayliss*, 427 F.3d at 1216.

Plaintiff asserts the ALJ erred by failing to incorporate a limitation in the RFC related to Dr. Rubin's comments in response to questioning about Plaintiff's

ability to stay on task.  ECF No. 29 at 6-8.[3]  "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In her opening brief, Plaintiff appears to acknowledge that Dr. Rubin did not assess a functional limitation related to her ability to stay on task, noting that Dr. Rubin's comments "appear to indicate that she might be off-task."  ECF No. 29 at 8.  However, in her reply brief, Plaintiff contends that Dr. Rubin agreed Plaintiff would be distracted for five to 10 minutes per hour.  ECF No. 31 at 2.  Plaintiff's argument misconstrues Dr. Rubin's testimony.  Her assertion focuses on the following exchange during the hearing:

> Plaintiff's counsel: And based on your thorough review of the record, Doctor, would it be, you know, consistent with the record to say that for a period of time, 50 minutes, she's absolutely fine, and then, you know, for 5 to 10 minutes, she is distracted by her symptoms?

---

[3] In her opening brief, Plaintiff also argues the ALJ erred by failing to incorporate Dr. Rubin's opinion that Plaintiff be restricted to a "well placed, stress-less situation" in the RFC.  ECF No. 29 at 6 (citing Tr. 73).  However, in her reply brief, "Plaintiff concedes that Dr. Rubin's comments, taken as a whole, amount to a retraction of his statement that Plaintiff would require a 'stress-less' environment – or, perhaps more clearly, a modification to state that a limit to simple routine tasks would be sufficient."  ECF No. 31 at 1-2.

ORDER - 12

Dr. Rubin: I have a feeling she's never completely fine. I mean sadly, I think she's always going to have some anxiety issues and depression issues, and some physical concerns. But I think she can at times focus enough, certainly for 50 minutes – those 50 minutes. At least that's my opinion.

ALJ: And it was your opinion, Doctor – it's my understanding from listening to you that, you know, at least to the performance of simple routine tasks that that focus could be consistently maintained. Correct?

Dr. Rubin: I think there are many jobs she could do even if she's having symptoms, yes.

Tr. 78-79.

The ALJ asked Dr. Rubin if it was his opinion that Plaintiff could maintain consistent focus to at least be able to perform simple routine tasks. Tr. 79. Dr. Rubin responded in the affirmative. Tr. 79. Dr. Rubin did not opine that Plaintiff would be off-task for five to 10 minutes after staying focused for 50 minutes. Accordingly, the ALJ did not err in crediting Dr. Rubin's opinion while failing to incorporate into the RFC a limitation related to being off-task by five to 10 minutes every hour.

### 2. Dr. Frank Rosekrans

On January 15, 2015, Frank Rosekrans, Ph.D., completed a psychological evaluation of Plaintiff. Tr. 477-91. Dr. Rosekrans diagnosed Plaintiff with major depressive disorder, single episode, moderate, somatic symptom disorder, post-traumatic stress disorder, and borderline personality disorder. Tr. 479. He opined

ORDER - 13

that Plaintiff had marked limitations in her ability to perform activities within a

schedule, maintain regular attendance, be punctual within customary tolerances

without special supervision, communicate and perform effectively in a work

setting, complete a normal work day and work week without interruptions from

psychologically based symptoms, and maintain appropriate behavior in a work

setting.  Tr. 480.  He found that Plaintiff had moderate limitations in her ability to

understand, remember, and persist in tasks by following detailed instructions, set

realistic goals, and plan independently.  Tr. 480.  Dr. Rosekrans opined that

Plaintiff had none or mild limitations in her ability to understand, remember, and

persist in tasks by following very short and simple instructions, learn new tasks,

perform routine tasks without special supervision, adapt to changes in a routine

work setting, make simple work-related decisions, be aware of normal hazards and

take appropriate precautions, and ask simple questions or request assistance.  Tr.

480.

The ALJ gave little weight to the opinion of Dr. Rosekrans.  Tr. 42.  Because

Dr. Rosekrans' opinion was contradicted by the nonexamining opinion of Dr.

Rubin, Tr. 64-79, the ALJ was required to provide specific and legitimate reasons

for discounting Dr. Rosekrans' opinion.  *Bayliss*, 427 F.3d at 1216.

### a. Internally Inconsistent

The ALJ discredited Dr. Rosekrans' opinion because his marked limitations were inconsistent with his observations and examination findings.  Tr. 31, 42.  A medical opinion may be rejected if it is unsupported by medical findings and treatment notes.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Adm.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ noted that Dr. Rosekrans' observations during Plaintiff's psychological evaluation were inconsistent with his opinion that Plaintiff was markedly limited in her ability to communicate and perform effectively or maintain appropriate behavior in a work setting.  Tr. 31-32, 41-42; *see, e.g.,* Tr. 481 (Plaintiff was "nicely dressed and groomed," appeared healthy, exhibited a normal affect, answered questions directly and appropriately, and appeared friendly and cooperative, even though she reported her mood as depressed and anxious); Tr. 481 (Plaintiff was "personable" and Dr. Rosekrans opined she "should be able to continue as she has in the past" with schooling and work once she obtained appropriate counseling).  The ALJ also noted that Dr. Rosekrans' examination findings and observations were inconsistent with his opinion that Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal workday

and workweek without interruptions from psychologically based symptoms. Tr. 31-32, 42; *see, e.g.,* Tr. 478 (Dr. Rosekrans found that Plaintiff's memory test scores showed "large discrepancies in performance, casting doubt on a neurological cause"); Tr. 481 (Dr. Rosekrans noted that the variance in Plaintiff's memory test scores was due to her difficulty focusing, but he also stated that her migraine headaches probably caused her concentration problems); Tr. 478 (Dr. Rosekrans found that Plaintiff's highest scale on the personality assessment inventory related to somatization, which indicated that her physical problems were caused or exacerbated by stress and psychological problems); Tr. 480 (Dr. Rosekrans concluded that Plaintiff should be able to continue to participate in school and work as she had in the past with counseling). Plaintiff argues that the only reason provided by the ALJ for rejecting Dr. Rosekrans' marked limitation in the area of "concentration, persistence, or pace" was that he rated her as having "none to mild" limitations in other unrelated areas. ECF No. 31 at 3. However, the ALJ found that Dr. Rosekrans' objective findings were "more supportive of less than marked" limitations, and the ALJ also cited Dr. Rosekrans' conclusion that Plaintiff could continue to participate in school and work as she had in the past with counseling. Tr. 32 (citing Tr. 480). The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Here, the ALJ reasonably concluded that Dr. Rosekrans' findings and observations did not support the level of impairment he opined. Tr. 31, 42.

### b. Inconsistent with Record as a Whole

The ALJ discounted Dr. Rosekrans' opinion because it was inconsistent with other evidence in the record. Tr. 31-32. An ALJ may discredit a physician's opinion that is unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ found Dr. Rosekrans' opinion that Plaintiff was markedly limited in her ability to communicate and perform effectively and maintain appropriate behavior in a work setting to be inconsistent with a report from Janice LaFountaine, LMFT, in April 2015. Tr. 31. The ALJ noted that Ms. LaFountaine opined Plaintiff had "only slight difficulty" in relational and/or work/school functioning, as her affective and emotional state appeared generally positive. Tr. 31 (citing Tr. 929). The ALJ also noted that Plaintiff held several jobs after her alleged onset date, and she only lost or quit those jobs because of physical impairments or a lack of hours. Tr. 32 (citing Tr. 478, 480, 775, 1246, 1293, 1361, 1389). Further, the ALJ noted that Plaintiff reported in December 2011 that she was able to handle her increased workload with additional hours at the YMCA. Tr. 32 (citing Tr. 1406). The ALJ observed that Plaintiff's participation in school and work activities suggested that

her mental functioning was not as limited as she alleged.  Tr. 31.  Inconsistency with other evidence in the record was a specific and legitimate reason to discount Dr. Rosekrans' opinion.

## B.    Step Five

At step five, Plaintiff challenges the ALJ's finding that there are a significant number of jobs in the national economy that Plaintiff can perform.  ECF No. 29 at 16-17.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389.  The number of jobs available in the national economy can be calculated by aggregating the numbers for multiple occupations.  20 C.F.R. §§ 404.1566, 416.966.  The Ninth Circuit has not established a "bright-line rule for what constitutes a 'significant number' of jobs."  *Beltran*, 700 F.3d at 389.  However, the Ninth Circuit has held the availability of 25,000 national jobs presents a "close call," but constitutes a significant number of jobs, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014), and also has held that the availability of 1,680 national jobs does not constitute a significant number of jobs.  *Beltran*, 700 F.3d at 390-91.  The Ninth Circuit has found "a comparison to other cases . . . instructive."  *Id*. at 389.

Here, the vocational expert testified that an individual with Plaintiff's RFC could perform the jobs of cashier II (150,000 jobs available in the national economy), agricultural produce sorter (15,000 to 16,000 jobs available in the national economy), and appointment clerk (100,000 jobs available in the national economy), for an aggregate number of 265,000 to 266,000 jobs in the national economy. Tr. 102-03. The vocational expert did not identify regional numbers. *Id.* Plaintiff contends the ALJ erred because the skill level of the appointment clerk job and the reasoning level of the cashier II job are inconsistent with her RFC. ECF No. 29 at 14-16. Plaintiff then asserts that the remaining positions available to Plaintiff as an agricultural produce sorter, with a total of approximately 15,000 to 16,000 jobs in the national economy, does not constitute a significant number of jobs. ECF No. 29 at 16-17. Defendant concedes the ALJ erred in finding Plaintiff capable of performing the jobs of appointment clerk and cashier II because these jobs both have a reasoning level of three, which is inconsistent with Plaintiff's RFC limitation to "simple, routine tasks." ECF No. 30 at 10 (citing *Zavalin v. Colvin*, 778 F.3d 842, 843-44, 847 (9th Cir. 2015) (The Ninth Circuit held the ALJ was required to resolve the "apparent conflict between Zavalin's limitation to simple, routine, or repetitive tasks, on the one hand, and the demands of Level 3 Reasoning, on the other hand.")). However, Defendant argues that even with these two jobs eliminated, the ALJ identified a significant number of jobs in

the national economy that Plaintiff could perform. ECF No. 30 at 9. Because both parties agree the ALJ erred in finding that Plaintiff was capable of performing the jobs of appointment clerk and cashier II, the Court will only address Plaintiff's challenge to whether the number of agricultural produce sorter jobs constitutes a significant number of jobs in the national economy. ECF No. 29 at 16-17.

Plaintiff argues that the 15,000 to 16,000 national jobs available to her as an agricultural produce sorter is far less than the 25,000 positions that the Ninth Circuit described as a "close call" in *Gutierrez,* 740 F.3d at 529, and that neither the ALJ nor the Appeals Council indicated the agricultural produce sorter job would be sufficient standing alone. ECF No. 29 at 17. Defendant asserts "[i]n the absence of any binding precedent holding to the contrary," this Court should find that the 15,000 to 16,000 national jobs identified in this case constitutes a significant number of jobs. ECF No. 30 at 8. Defendant cites several cases to demonstrate that district courts in the Ninth Circuit have come to divergent opinions when the number of national jobs is less than 25,000. ECF No. 30 at 11-12. However, as discussed *infra*, these cases do not support Defendant's position.

In the decisions cited by Defendant where courts found significant job numbers existed, those courts' conclusions often rested on a consideration of both national and regional job numbers. *See, e.g.*, *Aguilar v. Colvin*, No. 5:15-CV-02081-GJS, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016) (11,850 national

jobs and 1,080 regional jobs significant; observing trend in the Central District of California to find job numbers over 10,000 nationally and 1,000 locally to be sufficient); *Evans v. Colvin*, No. ED CV 13-01500 RZ, 2014 WL 3845046, at *1-*3 (C.D. Cal. Aug. 4, 2014) (6,200 national jobs and 600 regional jobs significant; conclusion based on regional jobs numbers); *Hoffman v. Astrue*, No. C09-5252RJB, 2010 WL 1138341, at *7 (W.D. Wash. Mar. 19, 2010) (9,000 national jobs and 150 regional jobs significant; relying on consideration of both figures).[4] In the instant case, the vocational expert did not testify to regional job numbers, and the ALJ made no findings regarding regional job numbers. Tr. 44, 102-03. Therefore, the cases identified *supra*, affirming an ALJ's finding of significant job numbers based in partial reliance on regional job numbers, do not compel this Court to affirm the ALJ's findings here. Defendant also cites cases where the courts found national job numbers similar to those at issue in this case to be insignificant. *See, e.g., Selimovic v. Colvin*, No. CIV 13-1248-PHX-MHB, 2014 WL 4662251, at *10 (D. Ariz. Sept. 18, 2014) (13,110 national jobs insignificant);

---

[4] The undersigned notes that the *Hoffman* case was decided in 2010, four years prior to Ninth Circuit's ruling in *Gutierrez*. Thus, the district court in *Hoffman* did not have the benefit of the Ninth Circuit's conclusion that 25,000 national jobs was a "close call." *Gutierrez*, 740 F.3d at 529.

ORDER - 21

*Baker v. Comm'r of Soc. Sec.*, No. 1:13-CV-01350-SAB, 2014 WL 3615497, at *8 (E.D. Cal. July 21, 2014) (14,500 national jobs insignificant); *Valencia v. Astrue*, No. C 11-06223 LB, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (14,082 national jobs insignificant). Notably, Defendant has cited only one district court case in the Ninth Circuit where national job numbers lower than 15,000 to 16,000 were found to be significant when standing alone. *Montalbo v. Colvin*, 231 F.Supp.3d 846, 863 (D. Haw. 2017) (12,300 national jobs significant). The undersigned is not persuaded that the cited authority supports a finding that 15,000 to 16,000 national jobs is significant.

Moreover, although the Ninth Circuit has declined to adopt a "bright line" rule about the sufficiency of jobs numbers, its recent unpublished authority has questioned the sufficiency of numbers that are similar to, and less than, those found in this case. *See, e.g.*, *Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017) (questioning sufficiency of 12,600 national jobs and 1,530 regional jobs); *Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017) (questioning sufficiency of 10,000 national jobs and 550 regional jobs). Further, in a recent decision in this District, a total of 16,042 jobs available in the national economy was found to be insignificant pursuant to Ninth Circuit precedent. *Ramsey v. Saul*, 1:18-CV-03095-FVS (E.D. Wash. Nov. 12, 2019). The undersigned recognizes that these unpublished cases are not binding authority, but finds the discussion

persuasive and relevant for the Court's consideration in evaluating what constitutes

significant numbers in the national economy.  Here, the number at issue (15,000 to

16,000 jobs) is 9,000 to 10,000 below the 25,000 jobs that the Ninth Circuit

previously found to be a close call.  *Gutierrez*, 740 F.3d at 529.

Based on the foregoing, the Court concludes that the reasonable

interpretation of the relevant authority is that 15,000 to 16,000 national jobs, with

no consideration of regional jobs, does not constitute a significant number under

the statute.  Thus, the comparison to other cases in this circuit supports a

determination that reliance on 15,000 to 16,000 agricultural produce sorter jobs in

the national economy is insufficient to carry the ALJ's burden at step five.  The

ALJ's step five finding constitutes harmful error and this case must be remanded

for the limited purpose of reevaluating step five.  On remand, the ALJ should be

directed to take testimony from a vocational expert to determine whether there are

other jobs available in significant numbers in the national and/or regional economy

that Plaintiff is capable of performing.

## C.  Remedy

Plaintiff requests that this case be reversed and remanded.  ECF No. 29 at

17, ECF No. 31 at 7.  As ordered *supra*, this case is remanded for the limited

purpose of reevaluating step five. The parties should not be permitted to reopen any other issue on remand.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 29**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 30**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED February 24, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24